UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  22-cv-23759-BLOOM

**VICTOR ARIZA**,

Plaintiff,

vs.

**CASABLANCO MATTRESS &
FURNITURE GALLERY, LLC., a Florida
limited liability company,**

Defendant.

_____/

## PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT
## AGAINST DEFENDANT WITH SUPPORTING MEMORANDUM OF LAW

Plaintiff, through undersigned counsel, moves this Court for entry of a Default Final Judgment against Defendant CASABLANCO MATTRESS & FURNITURE GALLERY, LLC, on the following grounds and uncontested facts:

1.     Plaintiff brought this action seeking declaratory and injunctive relief, costs, and attorney's fees against Defendant for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, in connection with the operation of Defendant's associated website, https://casablancofurnituregallery.com.

2.     Defendant was properly and timely served with a copy of the Complaint and Summons on November 28, 2022, as evidenced by the filed Return of Service [ECF No. 5]. Defendant failed to serve any response or answer to the Complaint and as a result a Clerk's Default was entered on December 30, 2022 [ECF No. 9].

3.      Because of the Default, Plaintiff is entitled to the declaratory and injunctive relief requested in the Complaint, as well as an award of his costs, reasonable attorney's fees, and expert expenses necessarily incurred through the preparation of this Motion, on the following uncontested facts and the application of law to those facts:

a)      Plaintiff is a resident of the State of Florida, resides within the Southern District of Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA"). (Complaint ¶4).

b)      Plaintiff is and at all relevant times has been blind and visually disabled in that he suffers from optical nerve atrophy, a permanent eye disease and medical condition that substantially and significantly impairs his vision and limits his ability to see. (Complaint ¶5). Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. (*Id.*).   As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq.*, and 42 U.S.C. §3602(h). (*Id.*). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances. (*Id.*).

c)      Because he is blind, Plaintiff cannot use his computer without the assistance of appropriate and available screen reader software. (Complaint ¶6).  At a rapid pace, the software reads the content of a webpage to the user. (*Id.*)  "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual

internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory – rather than visual – cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." (*Id.,* citing *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

d)  Defendant is a Florida limited liability company authorized to do business and doing business in the State of Florida. (Complaint ¶7).  Defendant owns and operates a retail store selling mattresses and furniture located at 9195 Southwest 40th Street, Miami, Florida, which Plaintiff had patronized and intended to patronize in the near future. (*Id.*).

e)  Plaintiff frequently accesses the internet. (Complaint ¶9). Because he is significantly and permanently blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites. (*Id.*). Screen reader software translates the visual internet into an auditory equivalent, and.at a rapid pace, the software reads the content of a webpage to the user. (Complaint ¶6).

f)  At all times material hereto, Defendant was and still is an organization that owns, operates, and controls a retail store selling mattresses and furniture under the name "Casablanco Mattress Furniture Gallery." (Complaint ¶10). The Casablanco Mattress Furniture Gallery store

is open to the public. (*Id.*). As the owner and operator of this retail store, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant is a private entity which owns and/or operates "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2). (*Id.*).

g)       Because Defendant is a store open to the public, Defendant's physical store is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(E), and its implementing regulations, 28 C.F.R. Part 36. (Complaint ¶11).

h)       Defendant also owns, controls, maintains, and operates an adjunct website, https://casablancofurnituregallery.com (the "Website"). (Complaint ¶12). One of the functions of the Website is to provide the public information on the location of Defendant's store that sells Defendant's merchandise within the State of Florida. (*Id.*). Defendant also sells to the public its merchandise through the Website, which acts as a point of sale for Defendant's merchandise available in, from, and through Defendant's physical store. (*Id.*). In addition, the Website allows the public to apply online for credit to make purchases of merchandise available in the physical store and allows users to arrange in-store pickups of merchandise purchased online. (*Id.*). The Website also services Defendant's physical store by providing information on available products, services, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers. (Complaint ¶13).

i)       Because the Website allows the public the ability to secure information about the location of Defendant's physical store, purchase merchandise also available for purchase in and from the physical store, apply online for credit to purchase merchandise available online and in the physical store, arrange in-store pickups of merchandise purchased online, and sign up for an

emailer to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical store, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical store, which is a place of public accommodation under the ADA. (Complaint ¶14).   As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar location and business. (*Id.*). Furthermore, the Website is a necessary service and privilege of Defendant's physical store in that, as a point of sale for the store, it enables users of the Website to make online purchases of Defendant's merchandise that is available from and in its physical store. (*Id.*).

j)      Because the public can view and purchase Defendant's goods through the Website that are also offered for sale in the physical store, thus having the Website act as a point of sale for Defendant's products also sold in the physical store, apply online for credit to purchase merchandise available online and in the physical store, arrange in-store pickups of merchandise purchased online, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical store, the Website is an extension of, and gateway to the physical store, which is a place of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). (Complaint ¶15).   As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar store that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical store. (*Id.*).

k)      At all times material hereto, Defendant was and still is an organization owning, operating, and controlling the Website. (Complaint ¶16).  Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar store that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical store. (*Id.*).  As such, Defendant has subjected itself and the Website to the requirements of the ADA. (*Id.*).

l)      Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied, Defendant's physical store and to check store hours and merchandise pricing, purchase merchandise, apply for store credit, arrange in-store pickups of merchandise purchased online, and sign up for an emailer to receive exclusive offers, benefits, invitations, and discounts for use at the Website or in Defendant's physical store. (Complaint ¶17). Plaintiff also intends to monitor the Website in the near future as a tester to ascertain whether it has been updated to interact properly with the screen reader software. (*Id.*).

m)      The opportunity to shop and pre-shop Defendant's merchandise, apply online for store credit, arrange in-store pickups and returns, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use both online and in the physical store from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. (Complaint ¶18).  Defendant has not provided its business

information in any alternative digital format that is accessible for use by blind and visually disabled individuals using screen reader software while using the internet. (*Id.*).

n)      Like many consumers, Plaintiff accesses numerous websites at a time to compare merchandise, prices, services, sales, discounts, and promotions. (Complaint ¶19). Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices. (*Id.*).

o)      During the month of October 2022, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, services, sales, discounts, and promotions being offered, learn about the brick-and-mortar store, check store hours, and check merchandise pricing with the intent to make a purchase through the Website or in the physical store. (Complaint ¶20).  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites. (*Id.*).  However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. (Complaint ¶21).  These barriers are pervasive and include, but are not limited to, the following:  (a) the company logo, which is the home page button/link, is designed to take the user from wherever they may be within the Website and return to the home page; (b) the telephone number provided on the Website is not labeled to integrate with the screen reader; it reads the numbers as numbers and does not state it is a telephone phone; (c) icons like search button are not labeled properly; this bars one from searching for a specific item; (d) product name and price are inaccessible; when choosing an item such as the Allegro 4 piece Bedroom Set, the cursor skips over the name and price of the furniture and jumps to the size option; and (e) the shopping cart the images are labeled as link and size, color, and price are

inaccessible. (*Id.*). The Website also lacks prompting information and accommodations necessary to allow visually disabled individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendant's merchandise from the Website. (Complaint ¶22). These access barriers were independently confirmed by Plaintiff's expert, Robert Moody, in October 2022. (Complaint ¶56).

p)     Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the Website. (Complaint ¶23).  However, Plaintiff was unable to do so because no such link or notice, statement, or policy existed on the Website. (*Id.*).

q)     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, services, discounts, and promotions, as provided at the Website and in the physical store as the non-visually disabled public. (Complaint ¶24).

r)     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendant's physical store and to use the Website, but he is presently unable to do so as he is unable to effectively communicate with Defendant due to his blindness and the Website's access barriers. (Complaint ¶25).  Also, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to his blindness and the Website's access barriers. (*Id.*). Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and

ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.  (*Id.*).

s)      Because the Website clearly provides support for and is connected to Defendant's retail store for its goods, services, operation, and use, and is a necessary service, privilege, advantage, and accommodation of Defendant's brick-and-mortar store for the purchase of Defendant's merchandise, the Website must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical store, which is a place of public accommodation subject to the requirements of the ADA. (Complaint ¶26).

t)      Defendant thus has not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical store in contravention of the ADA. (Complaint ¶38).

u)      The Website further does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility. (Complaint ¶36).

v)      Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals who are blind and visually disabled from the means to access and comprehend information presented therein. (Complaint ¶41). Defendant also is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website. (Complaint ¶42).

w)      The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities such as Plaintiff. (Complaint ¶43).

x)      Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs against Plaintiff as detailed above, and declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation. (Complaint ¶44).

y)      Notice to Defendant is not required because of Defendant's failure to cure the violations. (Complaint ¶45).

z)      Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202. (Complaint ¶46).

aa)      Plaintiff retained his attorneys, Roderick V. Hannah, Esq. and Pelayo M. Duran, Esq., to represent him in this case, and has agreed to pay them a reasonable fee for their services. (Complaint ¶47).

4.      Based on these uncontested facts, the supporting arguments below, and the affidavits and supporting materials provided, Plaintiff is entitled to entry of a final default judgment in his favor granting the declaratory and injunctive relief sought in the Complaint and awarding Plaintiff his reasonable attorney's fees, costs, and expert expenses incurred in connection with the case.  A proposed Order granting this Motion and a proposed Final Default Judgment are attached as Exhibits "A" and "B", respectively.

## SUPPORTING MEMORANDUM OF LAW

### I.      The ADA Claim

The ADA covers both tangible and "intangible barriers", which would include company websites, that restrict a disabled person's ability to access and enjoy the defendant entity's goods, services, and privileges.  *See* 42 U.S.C. § 12182(b)(2)(A)(i) – (ii); *Rendon v. Valleycrest*

*Productions, Ltd.,* 294 F.3d 1279, 1283 (11ᵗʰ Cir. 2002).  *See also Ariza v. Walters & Mason Retail, Inc.,* 561 F.upp.3d 1350, 1354-55 (S,D, Fla. 2021) (denying motion to dismiss website ADA claim where website acted as "intangible barrier" to purchase of the defendant's merchandise sold through the website); *Fernandez v. Bruno Northfleet, Inc.,* 568 F. Supp. 3d 1294, 1298-99 (S.D. Fla. 2021) (same); *Fernandez v. Mattress Xperts Broward, Inc.,* No. 21-80573-CIV-MARRA, 2021 WL 3931243 at *2 (S.D. Fla. Sep. 2, 2021) (same).  In this regard, a company's website violates the ADA in situations where its serves as an "intangible barrier" to disabled persons to communicate with the company's physical stores and to thereby access the goods, services, and privileges that are otherwise available in the company's physical stores, which are places of public accommodation under the ADA.  *Walters & Mason,* 561 F.Supp.3d at 1355; *Bruno Northflleet,* 568 F. Supp. 3d at 1298-99; *Mattress Xperts*, 2021 WL 3931243 at *2. In addition, judges within the Southern District have concluded that where a company's website acts as a point of sale for the company's merchandise that is also available in and from the company's physical stores, then the website is covered under the ADA to the extent it acts as an intangible barrier to access the company's goods and services. *Bruno Northflleet,* 568 F. Supp. 3d at 1298-99; *Mattress Xperts*, 2021 WL 3931243 at *2.

Similar to the websites that were at issue in *Walters & Mason, Bruno Northfleet* and *Mattress Xperts,* Defendant's website, as established by the uncontested facts in the Complaint, acts as a point of sale for Defendant's merchandise available in and from its physical store. (Complaint ¶¶12, 14, 15, 16, 26, and 50).  The uncontested facts further demonstrate that Defendant's Website is inaccessible to blind and visually disabled individuals such as Plaintiff who must use screen reader software to successfully access and navigate the website. (*Id.* at ¶¶19-23, 25, 27-34, 36-38).  Accordingly, Defendant has violated the ADA because the

undisputed inaccessibility of the Website has created an "intangible barrier" to Plaintiff, as a visually disabled person, to full and equal access to and enjoyment of the goods, services, facilities, privileges, and advantages that Defendant offers its sighted customers in and through its physical store.

**III.**     **Plaintiff's Attorney's Fees, Costs, and Expert Expense**

**A.**     **Entitlement**

Pursuant to the ADA, prevailing parties may be entitled to attorney's fees, litigation expenses, and costs. Specifically, 42 U.S.C. § 12205 states in pertinent part:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205 (emphasis supplied); *Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (quoting 42 U.S.C. § 12205). For purposes of the ADA, a "prevailing party" is one that "[r]eceive[s] at least some relief on the merits of his claim . . . ." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001) (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987) (internal quotation marks omitted)).

While the award of fees and costs are within the sound discretion of the trial court, the standards established for determining when a court should exercise this discretion to a prevailing party apply to ADA cases are those set forth by the U.S. Supreme Court in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978). *Bruce v. City of Gainesville*, 177 F.3d 949, 951-52 (11th Cir. 1999) (applying *Christiansburg* standard for prevailing plaintiffs in ADA suits). Under *Christiansburg*, a prevailing plaintiff "should ordinarily be awarded attorney's fees in all but special circumstances." *Id.* at 951.

There are no "special circumstances" present here under which this Court should not award Plaintiff his fees and costs in light of his entitlement to the full requested injunctive relief for his ADA claim against Defendant.  Plaintiff thus should be awarded his litigation costs and reasonable attorney's fees as the prevailing party under his ADA claim.  To this end, Plaintiff requests that the Court find that he is entitled to an award of his reasonable attorney's fees and taxable costs.

In addition, Plaintiff should be awarded his expert expense incurred in connection with bringing this case.  While expert witness fees are ordinarily not taxable costs, pursuant to 42 U.S.C. §12205 such fees may be taxed as a litigation expense in ADA cases. *Fox v. The Marquis Corp.*, 2010 U.S. Dist. LEXIS 25831, 2010 WL 1010871 at *7 (S.D. Fla. March 15, 2010) (citing *Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002)); *Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1353 (S.D. Fla. 2006) ("A prevailing ADA plaintiff may recover expert fees as a litigation expense.") (internal citation omitted).

### B.     Amount of Attorney's Fees Sought is Reasonable

### 1.     The lodestar method.

The Eleventh Circuit follows the "lodestar" method described in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), which held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," since this computation "[p]rovides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* at 433; *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).  Once the Court calculates this amount — the "lodestar" — it must consider whether any adjustments are warranted based on the results obtained by counsel. *Id.* at 1302.

The party seeking an award of fees bears the burden of documenting and substantiating both the number of hours and the hourly rate. *ACLU of Georgia v. Barnes*, 168 F.3d. 423, 427 (11th Cir. 1999).  In determining reasonable hourly rates in South Florida, the Court may also consider certain factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Ga. High. Express, Inc.*, 488 F.2d 14, 717-19 (5th Cir. 1974)).  Each of these factors will be discussed below.

        **a)**  **Results Obtained**.

Civil rights laws in general depend heavily upon private enforcement. *Hensley v. Eckerhart*, 461 U.S. 424, 445(1983). Where the ADA is concerned, "private enforcement suits are the primary method of obtaining compliance with the Act," *D'Lil v. Best Western Encina Lodge & Suites*, 538 F. 3d 1031, 1036 (9th Cir 2008); *Doran, v. 7-Eleven, Inc.*, 524 F.3d at 1041(same). Because of the importance of the federal rights private enforcement actions vindicate, such actions are, as the Supreme Court noted, "private in form only." *Guardian Ass'n v. Civil Service Comm'n*, 463 U.S. 582 (1983).  In *Villano v. Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001), the Eleventh Circuit held that "successful civil rights actions vindicate a public interest ...[and] [p]ublic benefit is a distinct measure of success in civil rights actions and ... a court must account for that distinct measure of success when calculating an award of fees and costs."

As the result of this lawsuit, the Plaintiff shall obtain significant beneficial results which substantially increase the accessibility of Defendant's website not only to him but also to all blind and visually disabled consumers.

### b)  Experience, Reputation, and Ability of the Attorneys.

Plaintiff's attorneys have significant litigation experience in both Federal and state court and have significant experience in civil rights cases, including ADA Title III litigation. Roderick Hannah has over 38 years of litigation and trial experience in South Florida, including handling a wide array of cases in the Southern District of Florida.  As lead or sole counsel, he has handled many federal cases involving discrimination matters, including cases arising under the ADA in both the employment and public accommodation contexts.  He currently devotes a large portion of his practice to ADA Title III accessibility issues, particularly to issues involving company website accessibility.  *See* Affidavit of Roderick V. Hannah, Esq., attached as Exhibit "C".

Pelayo Duran, Mr. Hannah's co-counsel, has over 24 years of litigation experience in South Florida and has handled and been involved in numerous cases in the Southern District of Florida, including cases arising under the ADA involving public accommodation discrimination. He, like Mr. Hannah, also devotes a substantial portion of his practice to ADA Title III website accessibility issues.  *See* Affidavit of Pelayo M. Duran, Esq., attached as Exhibit "D".

### c) Time and Labor Required.

Appended to Messrs. Hannah and Duran's respective supporting Affidavits as Exhibits "1" are copies of their respective time records documenting the time and effort which was required to obtain the resolution of this case. The time expended by Plaintiff's counsel in drafting this motion is also included.  In general, time incurred by Plaintiff's counsel in filing, preparing,

and litigating this fee application and any fee hearings thereon is and/or would be compensable. *See Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990); *Guerrero v. Commings*, 70 F.3d 1111 (9th Cir. 1995); *Davis v. City and County Of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992); *Valley Disposal, Inc. v. Central Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053 (2nd Cir. 1995); *Lund v. Affleck*, 587 F.2d 75 (1st Cir. 1978); *Johnson v. State of Mississippi*, 606 F.2d 635 (5th Cir. 1979); *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979).

As set forth in Messrs. Hannah and Duran's attached affidavits with their respective time records, Plaintiff's counsel spent a total of 13.1 combined hours working on this case.  In addition, the time amounts in the proffered time records do not account for any attorney time and costs which shall be expended on post-judgment efforts such as continuing to check on Defendant's website compliance. The time spent was reasonably necessary to vet, prepare, and file the case and secure the final default judgment obtaining the complete injunctive relief requested in the Complaint and to making Defendant's website fully accessible to visually disabled persons, including Plaintiff, nationwide.

### d)  Novelty and Difficulty of the Questions Presented and the Skill Requisite to Perform the Legal Services Properly.

It is estimated that there are very few firms nationwide that litigate ADA Title III claims, especially in the burgeoning and yet developing area of company website accessibility to blind and visually disabled persons.  Effective representation of plaintiffs in ADA actions requires not only sophisticated general litigation skills, such as familiarity with the rules of evidence and procedure, but, in addition, presents numerous issues regarding entitlement to injunctive relief, including Article III Constitutional standing, the nature of barriers to access, the concept of undue burden, the applicability of exemptions, issues of new construction and alterations versus pre-ADA construction, and extensive knowledge of the ADA, the applicable Web Content

Accessibility Guidelines (also known as the "WCAG", the "gold standard" in ADA website accessibility guidelines followed by the U.S. government's agencies), the Technical Assistance Manual, a multitude of other guides issued by the Department of Justice, the developing body of case law issued by the courts nationwide, and, finally, whether remedial measures are "readily achievable" and "technically feasible". In addition, it is not unusual for Plaintiff's attorneys to find themselves opposed by the substantial financial and legal resources of corporate defendants.

For those reasons, Plaintiff submits that the novelty and difficulty of the issues presented in ADA Title III actions and the skill requisite to properly address such issues justify a higher rate than many other areas of practice.

### e) Preclusion of Other Employment due to Acceptance of the Case and the Undesirability of the Case.

As noted above, the United States Supreme Court has recognized that civil rights advocates act as "private attorney generals." *See e.g., Hensley*, 461 U.S. at 445. The primary, and perhaps singular, reason public places are beginning to comply with the more than twenty year-old obligations of the ADA is because of private enforcement suits. *See Antoninetti v. Chipotle Mexican Grill, Inc.*, 613 F. 3d 971, 980 (9th Cir 2010), *cert. denied, Chipotle Mexican Grill, Inc., v. Antoninetti*, 2011 WL 645276 (79 USLW 3514, April 18, 2011). That notwithstanding, the efforts of individuals such as the Plaintiff and the attorneys who represent the disabled are "not pleasantly received," *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974). Indeed, another court in this District was far blunter in describing the reaction against such lawsuits as one of "vitriolic hostility." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996).

Because of the negative publicity and attitude that many have toward Title III ADA actions, Plaintiffs' counsel have predictably been precluded from other employment based on

acceptance of the case.  For instance, it is highly unlikely that a Plaintiffs' lawyers would attract business clientele who would pay hourly rates.  It has been recognized that civil rights plaintiffs' work is oftentimes undesirable, and that plaintiffs' attorneys are economically impacted by their decision to help the civil rights litigant.   As explained in *Johnson v. Georgia Highway Exp.*, *Inc.*, 488 F.2d 714 (5th Cir. 1974):

> "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant.... Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries. This can have an economic impact on his practice which can be considered by the Court."

488 F.2d at 719.

Additionally, in the instant case, the Plaintiff's rights, and those of all blind and visually disabled individuals, were vindicated by counsel working on this case, the time which could have been spent on other matters.

### f)  Reasonable Hourly Rate, Customary Fee, and Fees Awarded in Similar Cases.

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable, comparable skills, experience, and reputation. *See, Marisol A. v. Giuliani*, 111 F. Supp.2d 381 (S.D.N.Y. 2000).  The relevant community to which the Court should look is the District in which the case was brought. *Patrolmen's Benevolent Assn. of the City of New York, Inc. v. The City of New York*, 2003 WL 21782675 (S.D.N.Y. 2003); *AR v. New York City Department of Education*, 407 F.3d 65 (2d Cir 2005); *Access 4 All, Inc. v. Park Lane Hotel, Inc.*, 2005 WL 3338555 (S.D.N.Y. 2005).  Here, that is the Southern District of Florida.

In determining the reasonableness of the fees and hourly rates, it is appropriate to consider rates awarded in other cases.  Because the attorney compensation is based on

contingency, and payment has not been made, courts award the current prevailing market rate. The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed.  This takes into account the delay in payment.  *Lanni v. State of New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001).  Additionally, in considering the rates awarded in prior cases, courts adjust rates upward to account for inflation.  It is especially important in this case, which has been in litigation for months, without the Plaintiff's counsel having received any payment to date.

In numerous ADA website cases, including two prior case before this same Court, judges within this District have ruled that the $425.00 hourly rate being charged by Plaintiff's counsel, Messrs. Hannah and Duran, was not excessive and was fair and reasonable. *Ariza v. Wolf Fashion LLC,* No. 22-cv-21944-BLOOM, 2022 WL 3591294, at *2 (S.D. Fla. Aug. 22, 2022); *Ariza v. Untuckit, LLC,* Case No. 19-cv-24291-BLOOM, 2020 WL 408241 (S.D. Fla. Jan 24, 2020); *Fernandez v. Sunday State LLC,* No. 9:22-cv-80653-RS, 2022 WL 12256263, at *8 (S.D. Fla. Oct. 19, 2022); *Ariza v. South Moon Sales, Inc.,* No. 1:21-cv-23604-WILLIAMS/MCALILEY, 2022 WL 4345136, at *8 (S.D. Fla. Sept. 7, 2022), *report and recommendation adopted,* 2022 WL 4310972 (S.D. Fla. Sept. 19, 2022); *Ariza v. Diatrde LLC,* Case No. 21-cv-21137-GAYLES, ECF No. 20 at pp. 3-4 (S.D. Fla. Apr. 6, 2022); *Fuller v. Things Remembered, Inc.*, Case No. 19-62034-CIV-GAYLES/STRAUSS, 2020 WL 1316509 (S.D. Fla. Feb. 11, 2020); and *Moncada v. Intrigue Couture, Inc.*, Case No. 19-cv-61496-RUIZ, ECF No. 22 (S.D. Fla. Oct. 18, 2019).

The reasonableness of the hourly rates Plaintiff's counsel seek here is further supported by other Southern District of Florida decisions.  In the 2013 case of *Houston v. Arshak Corp.*, Case No. 13-cv-60752 (S.D. Fla. 2013) – a case resolved five years ago -- plaintiff's counsel was

awarded $420.00 per hour [*see* ECF Nos. 15 & 17]. In *Access 4 All, Inc. v. The TJX Companies, Inc.,* Case No: 11-cv-80109 (S.D. Fla.) – a case decided over nine years ago -- counsel for the defendant represented to the Court that $450.00 per hour was the rate for "senior" attorneys. [see ECF No. 30, at 11-12]. In *Houston v. South Bay Investors,* Case No. 13-CV-80193 (S.D. Fla. July 25, 2013) – a case decided seven years ago -- the Court found that the Plaintiff's requested hourly rate of $420.00 was "reasonable in light of counsels' experience and citation to other cases in this district wherein the courts approved an identical rate." In *Kennedy v. 5096 Forest Hill Investments, LLC,* Case No. 15-cv-81001, at ECF No. 21 (S.D. Fla. October 21, 2015) the Court found an hourly rate of $420.00 to be reasonable.

Similarly, although not controlling, courts in other jurisdictions have also approved rates ranging up to $430 per hour in similar types of litigation. For example, in *Rodriguez v. McLoughlin*, 84 F.Supp.2d 417 (S.D.N.Y. 1999) – a case now nine years old -- the court awarded the supervising attorney in a civil rights action $425 per hour. Indeed, hourly rates in the $400 to $430 range are not limited to large firms. *See, e.g., New York State NOW v. Pataki*, 2003 WL 2006608, at *2 (S.D.N.Y. Apr 30, 2003) (approving a rate of $430 an hour for a small civil rights litigator).

Furthermore, the $425.00 hourly rate for Plaintiff's counsel's work in this case was agreed to between Plaintiff and his counsel per the terms of their retainer agreement, a copy of which is attached as Exhibit "E".

Plaintiff in the instant action is seeking $425.00 per hour for his attorneys' time. Based on precedent and all relevant factors that this Court must consider, this amount is reasonable considering counsel's experience in this field, the contingent nature of the case, the terms of the

retainer agreement between the parties, and the rate being in line with the prevailing market rate in this District.

### g) Whether the Fee is Fixed or Contingent.

The fee in the instant action was and is contingent.  In fact, Plaintiff's counsel has incurred significant expenses in brining and pursuing this case, including the filing and service of process fees, copying charges, and an expert witness fee totaling $4,275.00. *See* Robert D. Moody invoice for services attached as Exhibit "F", Mr. Moody's C.V. as to his expert qualifications attached as Exhibit "G", and Bill of Costs attached as Exhibit "H".  Moreover, there is no certainty that Plaintiff's counsel will receive any compensation at all.  Therefore, in setting a reasonable hourly rate, Plaintiff submits that this Court should award the higher range of rates to account for the length of time and uncertainty that counsel will be paid at all.

### h) Time Limitations Imposed by the Client or Circumstances.

Because the barriers to access complained of by Plaintiff restricted and/or limited Plaintiff's access to the subject website, time was of the essence.  Every day that passed while the undersigned did not work on the case and make every effort to expedite its resolution, by pursuing litigation, was another day that the website would remain inaccessible.

### i) Nature and Length of the Professional Relationship with the Client

Messrs. Hannah and Duran have represented similarly disabled plaintiffs in many other actions, and have a continuing relationship with their clients, including Plaintiff in this particular action.  This has led to increased efficiency in the prosecution of this litigation.

Based on these relevant factors, Plaintiff and his counsel submit that the total amount of $5,567.50 in attorney's fees incurred to date and through the preparation of this Motion, based on 13.1 combined hours of attorney time, are reasonable and should be awarded.

**C.      Costs and litigation expenses.**

**1.  Taxable costs.**

Plaintiff seeks reimbursement of his statutory costs from Defendant, pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920.  Pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, the Court shall award costs to the prevailing party in a lawsuit.  Rule 54(d) creates a presumption in favor of awarding costs, which the opposing party must overcome. *Manor Healthcare Corp. v. Lomelo*, 929 F.3d 633, 639 (11th Cir. 1991).

The award of costs in favor of the prevailing party in federal court is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54. 28 U.S.C. § 1920 specifies the following as costs that a court may tax: (1) fees of the clerk and marshal; (2) fees of the court reporter for all of any part of the stenographic transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under section 1923 of this title; (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. *See* 28 U.S.C. § 1920; *Barberi v. PDVSOL, Ltd. Liab. Co.*, No. 16-23243-CV-GAYLES/TUR, 2017 U.S. Dist. LEXIS 81267, at *27-28 (S.D. Fla. May 24, 2017).

The decision to award costs is discretionary with the Court, but the Court may tax items specifically enumerated in 28 U.S.C. § 1920, absent alternative contractual or statutory authority. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).  In the instant case, Plaintiff's Counsel incurred taxable costs in the amount of $496.40, consisting of the case filing fee ($402.00), the cost for service of process of the Complaint on Defendant ($58.40), and the

costs for copies of papers that were necessarily obtained for use in this case ($36.00).  The allowable taxable costs per 28 U.S.C. § 1920(1) and (4) are thus $496.40.

### 2.   Expert witness expenses (non-taxable costs).

As mentioned above, expert witness fees are ordinarily not taxable costs; however, pursuant to 42 U.S.C. §12205 such fees may be taxed as litigation expenses in ADA cases. *Fox v. The Marquis Corp.*, 2010 U.S. Dist. LEXIS 25831, 2010 WL 1010871 at *7 (S.D. Fla. March 15, 2010) (citing *Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002)); *Hansen v. Deercreek Plaza, LLC,* 420 F. Supp. 2d 1346, 1353 (S.D. Fla. 2006) ("A prevailing ADA plaintiff may recover expert fees as a litigation expense.") (internal citation omitted).

As set forth on the detailed invoice for services of Plaintiff's expert, Robert D. Moody, attached as Exhibit "F", Mr. Moody spent considerable time and effort, totaling 9.50 hours, to analyze Defendant's website on two separate occasions prior to the filing of the lawsuit, and then continued to provide expert input as the case progressed. Thus, Plaintiff's expert performed valuable services at the rate of $450.00 per hour for the progress and outcome of the case, and Plaintiff is entitled to expert witness fees as non-taxable costs in the total amount of $4,275.00. This amount is consistent with similar amounts Mr. Moody has been awarded for his expert witness services in prior ADA website cases in this District, including decision by this same Court.  *See, e.g., Ariza v. Wolf Fashion LLC,* 2022 WL 3591294, at *2-3 (awarding Mr. Moody expert fees of $4,275.00 as "reasonable and recoverable" expert witness litigation expense); *Fernandez v. Sunday State LLC,* 2022 WL 12256263, at *9 (same); *Ariza v. South Moon Sales, Inc.,* 2022 WL 4345136, at *9 (same) ; *Ariza v. Diatrde LLC,* Case No. 21-cv-21137-GAYLES, ECF No. 20 at pp. 3-4 (same).

III.   **Conclusion.**

Based on the foregoing, Plaintiff seeks and believes that he is entitled to an Order granting this Motion as attached as Exhibit "A" and to entry of the Final Default Judgment attached as Exhibit "B", including an award to Plaintiff of $10,338.90, comprised of his attorney's fees in the total amount of $5,567.50, taxable costs in the amount of $496.40, and litigation expenses – i.e., expert witness fees – in the amount of $4,275.00.

Respectfully submitted,

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 North Hiatus Road
Sunrise, FL  33351-7919
T. 954/362-3800
954/362-3779 (Facsimile)
Email: rhannah@rhannahlaw.com

By_____*s/ Roderick V. Hannah*_____
        RODERICK V. HANNAH
        Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: pduran@pelayoduran.com

By ____*s/ Pelayo M. Duran*_____
        PELAYO M. DURAN
        Fla. Bar No. 0146595

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of January, 2023, a true and correct of the foregoing was electronically filed and was served via regular U.S. Mail on the Defendant as follows:

Jose M. Blanco III
as Member and Registered Agent
Casablanco Mattress & Furniture Gallery, LLC
9195 SW 40th Street
Miami, FL  33165

/s/  *Roderick V. Hannah*_____
        Roderick V. Hannah

24